**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JARRICK EARL DENEWILER,

Petitioner,

v. Civ. No. 24-1243 SMD/GBW

ATTORNEY GENERAL
STATE OF NEW MEXICO and
JESSICA VIGIL RICHARDS,

Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before me on Petitioner Jarrick Earl Denewiler's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Amended Petition) (*doc. 7*) and pursuant to the Order of Reference (*doc. 9*). I RECOMMEND denying the Petition for the reasons explained below.

## I. Background

Petitioner was charged by criminal information on May 14, 2021, with twenty-three counts including aggravated assault upon a peace officer, aggravated assault with a deadly weapon, aggravated fleeing a law enforcement officer, and criminal damage to property. *Doc. 11-1* at 4–8. All charges were based on the events of April 29, 2021, when Petitioner was involved in a high-speed police pursuit in Santa Fe County, New Mexico.

Petitioner proceeded pro se in the state trial court, where he filed numerous motions, a pretrial habeas petition, and underwent a competency evaluation. *See generally docs*. *11-1*, *11-3*. On April 7, 2023, the State filed a Final Amended Criminal Information charging Petitioner with two counts of aggravated assault on a peace officer with a deadly weapon, two counts of aggravated assault with a deadly weapon, one count of aggravated fleeing a law enforcement officer, and two counts of criminal damage to property exceeding $1,000. *Doc. 11-3* at 53–54.

A bench trial was held on April 11–12, 2023. *Doc. 11-3* at 70; *doc. 12-1*. The court found Petitioner guilty of all charges except for one count of criminal damage to property. *Doc. 11-3* at 70–71. On May 2, 2023, Petitioner was sentenced to a total period of eighteen years of incarceration. *Id.* at 74–77. Petitioner's appeal was denied on February 19, 2024, *id.* at 115–120, and his petition for a writ of certiorari to the New Mexico Supreme Court was denied on April 10, 2024, *id*. at 131–32. Petitioner was represented by counsel on direct appeal and on petition for certiorari.

On July 30, 2024, Petitioner filed a pro se petition for writ of habeas corpus with the state district court. *Id.* at 140–87. The district court denied his petition on October 15, 2024. *Id*. at 243–48. The New Mexico Supreme Court denied certiorari on January 8, 2025. *Id*. at 261.

Petitioner filed for relief in this Court on December 11, 2024. *Doc. 1*. He filed an amended petition, by order of the Court, on November 26, 2025. *Doc. 7*. Respondents

filed their answer on February 13, 2026. *Doc. 11*. Petitioner filed a "traverse" on March 3, 2026, which I construe as a reply because it specifically rebuts Respondents' brief. *Doc. 13*.

**II. Standard of Review**

Petitions for habeas relief from a state court judgment are governed by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The requirement that the state court's decision must contravene a decision "by the Supreme Court of the United States" is strictly construed; lower federal court precedents, Supreme Court dicta, and Supreme Court "holdings that speak only at a high level of generality" are all insufficient grounds for relief. *Brown v. Davenport*, 596 U.S. 118, 136 (2022) (citations omitted). Habeas corpus is "not a substitute for ordinary error correction through appeal," but rather functions as a "guard against extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562

U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 322 n.5 (1979) (Stevens, J., concurring)). Accordingly, the writ may issue only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with the Supreme Court's precedents. *Id*. at 102; *see also White v. Woodall*, 572 U.S. 415, 427 (2014) (an application of federal law is unreasonable "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement" (quotation and citation omitted)).

A federal court cannot grant a petition under § 2254 unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The petitioner is limited to the arguments raised before the state court. *See Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006).

## III. Analysis

Petitioner raises five grounds for relief under § 2254: (1) violation of his right to a speedy trial, (2) the sufficiency of the evidence to support his aggravated assault convictions, (3) the arresting officers' failure to comply with the Law Enforcement Safety Pursuit Act, (4) the district court's denial of his requests for $200, a computer system, and an expert witness, and (5) ineffective assistance of counsel on petition for

writ of certiorari.[1] *See doc. 7*.

A. Ground One: Speedy Trial Rights

As the first ground for relief, Petitioner asserts he was deprived of his Sixth Amendment right to a speedy trial. *Id*. at 5. Petitioner was arrested on April 29, 2021, and charged on May 14, 2021, but was not tried until April 11, 2023, approximately two years later.

1. *Failure to Preserve*

On direct appeal, the New Mexico Court of Appeals held that Petitioner had not preserved his constitutional speedy trial argument because he did not "proffer any argument regarding the *Barker* factors and, instead, his motion to dismiss was couched in a belief that the six-month rule applied to his case." *Doc. 11-3* at 118 (quotation omitted). Petitioner contends that he asserted his speedy trial rights before the trial court on four occasions,[2] but does not show that he proffered argument regarding the *Barker* factors. *Doc. 7* at 5. The record shows that on December 2, 2021, and February 6, 2022, Petitioner filed motions arguing his case should be dismissed because he had been

[1] Because denial is recommended on the merits, I assume without deciding that Petitioner's claims were properly exhausted. *See Brown v. Sirmons*, 515 F.3d 1072, 1092–93 (10th Cir. 2008) ("[I]n the interest of efficiency, we have held that '[w]e can avoid deciding procedural bar questions where the claims can readily be dismissed on the merits.'" (quoting *Snow v. Sirmons*, 474 F.3d 693, 717 (10th Cir. 2007))).

[2] Petitioner asserts that he raised the issue by motion on December 2, 2021, and orally on July 21, 2022, September 15, 2022, and November 4, 2022. *Doc. 7* at 5. In the reply brief, Petitioner also contends the issue was raised when his counsel filed an "Entry of Appearance and Demand for Speedy Trial." *Doc. 13* at 4.

held more than 182 days in violation of the New Mexico Rules of Criminal Procedure.[3] On April 14, 2023, Petitioner again argued that his pretrial detention had surpassed the "six month rule" codified in the New Mexico Rules Annotated, though he also stated generally that ""[t]he right to a fair and speedy trial is a fundamental United States Constitutional Right that is guaranteed to all citizens accused of committing crimes." *Doc. 11-3* at 62.

On review of the record, it does not appear that the appellate court was unreasonable in determining that Petitioner's speedy trial argument was based exclusively on the "six month rule," not on federal law, and that the constitutional speedy trial argument was accordingly not preserved. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000) ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."); *Sweat v. Att'y Gen. for the State of N.M.*, Civ. No. 19-987 JB/GJF, 2023 U.S. Dist. LEXIS 227904, at *18 (D.N.M. Dec. 21, 2023), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 14593 (Jan. 27, 2026) ("[T]he Court finds that the New Mexico Court of appeals did not make an unreasonable legal determination, or a determination inconsistent with clearly established federal law, when it . . . held that Petitioner's

[3] Petitioner argued specifically that Rules 6-506, 7-506, and 8-506 NMRA limited the allowable period of detention to 182 days. *Doc. 11-3* at 28, 33–34. Petitioner does not reprise this argument on petition under § 2254, *see doc. 7* at 5, nor is it grounded in federal law, and I therefore have not considered it.

failure to raise any speedy trial argument before the trial court was dispositive.”). Petitioner therefore has not shown that the appellate court’s decision was contrary to federal law.

2. Barker *Factors*

Even if this Court were to consider the constitutional issue *de novo* on the merits, the record does not justify relief. “The Fourteenth Amendment incorporates the right to a speedy trial against the states.” *Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004) (citing *Klopfer v. North Carolina*, 386 U.S. 213, 223–24 (1967)). To determine if the delay in a particular case was constitutionally permissible, courts balance the four “*Barker* factors”: (1) the length of the delay before trial, (2) whether the government or the criminal defendant is more to blame for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether he suffered prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). A delay is “presumptively prejudicial” if it approaches one year, triggering the rest of the *Barker* inquiry. *Id*. at 652 n.1. On habeas petition, the federal court’s “inquiry is limited to determining whether th[e] delay is contrary to clearly established Supreme Court precedent.” *Jackson*, 390 F.3d at 1264 n.4. Because approximately two years elapsed between Petitioner’s arrest and trial, the delay was presumptively prejudicial and the remaining three factors are properly considered.

On the second factor, it does not appear that the government was principally to blame for the delay. Petitioner filed no fewer than eight pro se motions before the trial court between June 30, 2021, and January 24, 2022, including at least two motions to dismiss the charges against him. *See doc. 11-1* at 9, 12, 14, 17; *doc. 11-3* at 13, 26, 28–29. On August 9, 2021, Petitioner requested a delay of the trial date because of his appointed counsel's "failure to assist the Defense." *Doc. 11-1* at 13. On February 6, 2022, Petitioner filed a state habeas petition challenging his pretrial detention. *Doc. 11-3* at 33–37. In July 2022, although the State requested a continuance, the court told Petitioner it would not hold the delay against either party because Petitioner had pending motions that had not been properly filed. *Id.* at 108. In September 2022, the State again requested a continuance and the trial court stated it would hold this time against the State. *Id*. From October 7, 2022, to December 22, 2022, however, Petitioner represented that he was not ready for trial because the court had not ruled on his pending motions. *Id*. The court ruled on the motions at hearing on November 4, 2022. *Id*. On December 22, 2022, the trial court ordered a competency evaluation, explaining that Petitioner:

> represents himself, refuses to avail himself of the public defender or private counsel, interupts [sic] the court, and is not knowledgeable of the law, but continues to file and argue several motions not supported by the law and faces serious charges and exposure to years of incarceration if convicted.

*Id.* at 41. The competency review hearing was held February 17, 2023. *Doc. 11* at 15. Trial began less than two months later, on April 11, 2023. On balance, and having fully reviewed the record, I find that the government was not responsible for the majority of the two-year delay; rather, Petitioner's decision to file and argue numerous pro se motions, some of them duplicative and/or improperly filed, was the principal cause. In addition, although Petitioner did not request the competency evaluation, I do not find that the State was to blame for that portion of the delay. *See, e.g.*, 18 U.S.C. § 3161(h)(1)(A) (specifically excluding from the Speedy Trial Act's time computation "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant").[4]

The third factor—Petitioner's assertion of the speedy trial right—does not weigh heavily in either direction. This factor weighs in favor of a defendant "[t]he sooner [he] raises the speedy trial issue," and weighs against a defendant who "waits for months to assert his speedy trial right." *United States v. Landa-Arevalo*, 104 F.4th 1246, 1256–57 (10th Cir. 2024) (quoting *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010)). On the one hand, the record shows that Petitioner repeatedly asserted his right to a speedy trial, albeit under a mistaken understanding of New Mexico procedural rules, and

---

[4] While the federal Speedy Trial Act does not apply to Petitioner's state court case, its purpose is to "give[] effect to a Defendant's Sixth Amendment right to a speedy trial," *United States v. Nevarez*, 55 F.4th 1261, 1263 (10th Cir. 2022), and its exclusion of the time to evaluate competency is therefore instructive.

Petitioner asserts that his attorney filed an "Entry of Appearance and Demand for Speedy Trial" as early as May 17, 2021. *Doc. 13* at 4. On the other hand, Petitioner requested a continuance of the trial date on August 9, 2021, *doc. 11-1* at 13, and he did not assert his speedy trial rights by motion until December 2, 2021, more than seven months after his arrest, *see doc. 11-3* at 28. Therefore, the third factor weighs only slightly in Petitioner's favor.

On the fourth factor, Petitioner "bears the burden to show he suffered prejudice because of the delay." *Landa-Arevalo*, 104 F.4th at 1257 (citation omitted). Where the delay is "extreme," prejudice is presumed and the defendant need not make a particularized showing. *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009) (citing *Doggett*, 505 U.S. at 655). However, a delay of two years—approximately the time between arrest and trial in Petitioner's case—has not been considered extreme. *See United States v. Garcia*, 59 F.4th 1059, 1069 (10th Cir. 2023) ("[G]enerally the court requires at least a six-year delay before allowing the delay itself to constitute prejudice."); *Toombs*, 574 F.3d at 1275 (holding a twenty-two month delay was not extreme). Accordingly, the court must consider whether Petitioner has shown prejudice with reference to the following interests: "(i) preventing oppressive pretrial incarceration; (ii) minimizing the accused's anxiety and concern; and (iii) minimizing the possibility of impairing the defense." *Garcia*, 59 F.4th at 1069 (citation omitted). The third interest, impairment of the defense, "is the most serious because the inability of a

defendant to adequately prepare his case skews the fairness of the entire system." *Id.* (quoting *United States v. Seltzer*, 595 F.3d 1170, 1179–80 (10th Cir. 2010)).

Petitioner argues his defense was impaired because "if [his] trial was held in 60 days his vehicle would still have been at the impound yard and [Petitioner] could have had the brakes looked at by a[n] expert witness." *Doc. 7* at 5. The inspection, he contends, would have shown that the vehicle's brakes were faulty and he "could not avoid a collision" with Ms. Martin and Ms. Collins, two civilian drivers whose vehicles he hit. *Id*. This argument fails on two fronts. First, there is no reason to believe that even the most diligent prosecution of Petitioner's case would have led to trial within 60 days, meaning the evidence would have been destroyed regardless of the additional delay. Second, even if Petitioner's account is to be credited, there is no reasonable possibility that the additional evidence would have altered the outcome of his case. Petitioner admits that he "drove his vehicle at a [r]eckless speed of 140MPH," *doc. 7* at 9, while leading police on an extended high speed pursuit and colliding with other vehicles. Petitioner does not allege—nor could he—that the failure of his brakes caused this conduct. Indeed, the decision to continue driving at high speeds with faulty brakes would be particularly reckless. As the appellate court explained with respect to the convictions of aggravated assault against Ms. Martin and Ms. Collins, "[t]he State's burden . . . was merely to establish that Defendant 'did an unlawful act which caused [the victim] to reasonably believe that [he] was in danger of receiving an immediate

battery, that the act was done with a deadly weapon, and that it was done with general criminal intent.'" *Doc. 11-3* at 116 (quoting *State v. Branch*, 417 P.3d 1141, 1148 (N.M. Ct. App. 2018)). The prosecution was not required to show that Petitioner intentionally collided with the other vehicles. Therefore, it does not follow that if Petitioner's brakes were faulty, he would not have been convicted under the facts shown at trial and determined by the state court.

In his reply brief, Petitioner also argues that he "suffered unwonted anxiety after his behaviors placed him into Administrative Segregation" and that officers "sabotaged his food trays and performed needless cell searches." *Doc. 13* at 5. Petitioner does not provide further specifics or evidence. *See Landa-Arevalo*, 104 F.4th at 1257 ("Announcing that pretrial incarceration is oppressive does not make it so."); *House v. Long*, 2025 U.S. App. LEXIS 13062, at *18 (10th Cir. May 29, 2025) ("Mr. House alleges that officers twice 'assaulted' him while he was in pretrial detention, but he provides no information or evidence about the circumstances surrounding these alleged assaults."). Moreover, Petitioner did not reference these circumstances when arguing that he was prejudiced on direct appeal. *Doc. 11-3* at 110; *see House*, 2025 U.S. App. LEXIS 13062, at *18 ("Mr. House cannot establish prejudice in this forum by relying on evidence that he did not raise in his direct appeal[.]" (citing *Williams*, 529 U.S. at 437)). Finally, even assuming that the interests of oppressive pretrial incarceration and minimization of anxiety and concern weigh in Petitioner's favor, the Tenth Circuit has instructed that there is

nevertheless insufficient proof of prejudice "without evidence that the defense was hindered as a result of the delay." *Garcia*, 59 F.4th at 1071.

In sum, even assuming that Petitioner's speedy trial claim was preserved, he has not shown an entitlement to relief under § 2254 because he cannot show his rights were violated under the applicable factors. *See Ray*, 390 F.3d at 1267 ("In order to grant habeas relief [on a speedy trial claim], we must find pursuant to clearly established Supreme Court law that there is no possible balancing of these factors that is consistent with the [state court's] decision."). I therefore recommend denial on the first ground.

B. <u>Ground Two: Insufficient Evidence</u>

As the second ground for relief, Petitioner challenges the sufficiency of the evidence to support his convictions for aggravated assault. *Doc. 7* at 7–8. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On review under § 2254, the court's role is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). The state court's findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1).

Petitioner argues there is insufficient evidence to support his convictions for aggravated assault with a deadly weapon against Ms. Martin and Ms. Collins, and

aggravated assault upon a peace officer against Deputy Lopez and Lieutenant Benavidez. *Doc. 7* at 7–8. He contends that (1) Ms. Martin and Ms. Collins lied about being in fear, (2) he did not intend to collide with Ms. Collins, (3) Deputy Lopez could have steered his vehicle off the road to "avoid a potential collision" with Petitioner's oncoming vehicle, (4) Lieutenant Benavidez put himself in a dangerous situation by standing on the road to throw a spike strip, and (5) Petitioner did not intend to cause fear to Lieutenant Benavidez. *Id*.

The New Mexico Court of Appeals rejected these arguments, holding that the victims' testimony was sufficient to establish their reasonable fear and that the law does not require specific intent for aggravated assault. *Doc. 11-3* at 116–18. It held that the requisite general intent was established:

> Defendant acknowledges he was driving erratically at a rate of between 80 and 108 miles per hour while attempting to avoid the police. This evidence was sufficient for the fact-finder to conclude that Defendant committed an unlawful act with general criminal intent.

*Id*. at 116; *see also United States v. Manzanares*, 956 F.3d 1220, 1227 (10th Cir. 2020) ("[A]ggravated assault does not require proof of a specific intent to assault the victim, or of a specific intent to injure or even frighten the victim[;] aggravated assault is not a specific intent crime, but rather is a general intent crime." (citation omitted)); *Branch*, 417 P.3d at 1148 ("[S]pecific intent is not an essential element of aggravated assault." (citation omitted)). The Court of Appeals also found that the victims' fear was established because "[e]ach of th[e] victims . . . testified regarding both Defendant's

conduct and the imminent fear of harm that resulted from that conduct." *Doc. 11-3* at 117.

The undersigned agrees with the state appellate court and concludes that a rational trier of fact could have found the essential elements beyond a reasonable doubt. The State was not required to prove that Petitioner intended to assault the victims, only that he "did an unlawful act which caused [the victims] to reasonably believe that [they were] in danger of receiving an immediate battery, that the act was done with a deadly weapon, and that it was done with a general criminal intent." *State v. Manus*, 597 P.2d 280, 284 (N.M. 1979) (citing NMSA §§ 30-3-1, 2); *see also* NMSA § 30-3-1(B) (defining assault); NMSA § 30-3-2(A) (aggravated assault); NMSA § 30-22-22(A)(1) (aggravated assault upon a peace officer). There was sufficient evidence of Petitioner's general criminal intent. At trial, the State presented evidence that Petitioner drove up very fast behind Ms. Collins and Ms. Martin, respectively, and hit each of their vehicles; that Deputy Lopez had to steer off the roadway to avoid a high-speed, head-on collision with Petitioner during the pursuit; and that Petitioner swerved toward Lieutenant Benavidez while he was on the roadway throwing spike strips. *Doc. 12-1* at 6–7, 11–13, 14–15; *doc. 12-2* at 6. Each victim testified to his or her fear. *Doc. 12-1* at 2, 7, 13–14; *see State v. Soliz*, 454 P.2d 779, 780 (N.M. Ct. App. 1969) ("As a general rule, the testimony of a single witness is sufficient evidence for a conviction." (citation omitted)). A rational fact-finder could conclude that their fear was reasonable under the circumstances.

There is also no question that Petitioner's vehicle, driven recklessly at a high rate of speed, was a deadly weapon under the applicable law. *See* NMSA § 30-1-12(B) (defining a deadly weapon as "any weapon which is capable of producing death or great bodily harm"). In sum, the evidence was sufficient for a rational fact-finder to find the necessary elements beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. I therefore recommend denial on the second ground.

C. Ground Three: Law Enforcement Safety Pursuit Act

As the third ground for relief, Petitioner asserts that law enforcement officers failed to comply with the New Mexico Law Enforcement Safe Pursuit Act (LESPA). *Doc. 7* at 9. The LESPA requires, inter alia, that every law enforcement agency must establish a written policy for high speed pursuits and that under such policy, "a law enforcement officer shall not initiate or continue a high speed pursuit when the immediate danger to the officer and the public created by the high speed pursuit exceeds the immediate danger to the public if the occupants of the motor vehicle being pursued remain at large." NMSA § 29-20-4(A), (C)(2). Petitioner contends that officers should have terminated the pursuit in his case because he "drove his vehicle at a [r]eckless speed of 140 MPH, he swerved into the oncoming lane, he drove head on with [oncoming] vehicles, and he drove on the opposite side of the road to pass congested traffic." *Doc. 7* at 9. Accordingly, Petitioner's theory appears to be that the

danger caused by pursuing him outweighed the danger to the public if he remained at large.

On direct appeal, Petitioner argued that the State had presented insufficient evidence of aggravated fleeing a law enforcement officer because officers did not comply with the LESPA. To the extent Petitioner reprises the same argument here, it does not entitle him to relief. Admittedly, the New Mexico statute criminalizing aggravated fleeing a law enforcement officer states that it:

> consists of a person willfully and carelessly driving a vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop . . . by a uniformed law enforcement officer in an authorized emergency vehicle . . . *in pursuit in accordance with the provisions of the Law Enforcement Safe Pursuit Act*.

NMSA § 30-22-1.1(A) (emphasis added). However, notwithstanding the statutory language emphasized above, the New Mexico Supreme Court has explicitly held that compliance with the LESPA is not an essential element of the crime of aggravated fleeing. *State v. Padilla*, 176 P.3d 299, 306–07 (N.M. 2008). Therefore, the alleged failure to comply with the LESPA—even if taken as true—did not render the evidence against Petitioner insufficient.

In the reply brief, Petitioner also argues that the officers' failure to follow LESPA procedures violated his due process rights under the Fourteenth Amendment. *Doc. 13* at 15. He cites *Lewis v. Sacramento County*, 98 F.3d 434 (9th Cir. 1996), which involved a claim brought under 42 U.S.C. § 1983 on behalf of a motorcycle passenger who was

killed during a pursuit. The Ninth Circuit held that because there was no evidence the decedent passenger or the driver had violated any law before the pursuit began, and there was no apparent danger in allowing them to flee, there was a genuine issue as to whether the officer violated the decedent's substantive due process right to life and personal security. 98 F.3d at 442, 447. Petitioner has not shown that he was injured during the pursuit or that officers acted with "deliberate indifference to, or reckless disregard for, [his] right to life and security." *Id*. at 441. His reliance on *Lewis* is therefore inapposite.

In addition, there is no evidence that officers violated the LESPA. Under the statute, "a law enforcement officer may initiate a high speed pursuit to apprehend a suspect who the officer has reasonable grounds to believe poses a clear and immediate threat of death or serious injury to others or . . . to the safety of others." NMSA § 29-20-4(C)(1). When the pursuit was initiated, Petitioner was driving recklessly at a high rate of speed and had collided with other vehicles. It was therefore reasonable for officers to believe that he posed a clear and immediate threat to the safety of others. Because Petitioner has not shown that the state court's decision was contrary to federal law or involved an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d), I recommend denial on this ground.

D. Ground Four: Abuse of Judicial Discretion

Next, Petitioner contends the trial court abused its discretion by refusing his requests for (1) an expert witness to inspect his vehicle's brake system, (2) $200 for his defense, and (3) availability of a computer system so he could work on the police chase videos. *Doc. 7* at 11. He argues that if an expert had been retained, it would have revealed that his vehicle's brakes were faulty and he could not avoid colliding with Ms. Martin and Ms. Collins.[5] *Id*. In addition, he would have had a "better defense" with $200 and the ability to review police chase videos. *Id*.

Petitioner does not ground these assertions in federal law, but merely argues that the trial judge's denial of these requests was an "abuse of judicial discretion by the district court." *Id*. On direct appeal, the New Mexico Court of Appeals rejected the argument that the district court should have provided him with $400 of financial assistance and an expert witness to inspect his brakes, holding that NMSA § 31-16-8(B)(2) did not require the court to reimburse a self-represented party and that Petitioner presented "no authority indicating that the district court was required to provide him with an expert witness." *Doc. 11-3* at 119. Petitioner presents no such authority now. *Farretta v. California*, cited in Petitioner's reply, establishes that a criminal defendant has the right to represent himself but does not describe any right to

[5] For the reasons explained above, Petitioner has not shown that this evidence—even assuming it existed—would actually have altered the outcome of his trial, i.e., that his defense was prejudiced by its absence.

funding or other specific resources. 422 U.S. 806 (1975); *see doc. 13* at 16. I therefore find no basis for relief.

E. <u>Ground Five: Ineffective Assistance of Counsel</u>

Finally, Petitioner asserts that his counsel provided ineffective assistance on petition for writ of certiorari to the New Mexico Supreme Court. *Doc. 7* at 13. Specifically, he takes issue with the following statement included in the brief:

> As the Court of Appeals recognized, [Petitioner] did not make a specific argument for a violation of his right to speedy trial under *Barker v. Wingo*.

*Doc. 7* at 13; *doc. 11-3* at 128. Petitioner argues that this "incorrect" statement deprived him of the Supreme Court's review of his speedy trial rights. *Doc. 7* at 13.

To succeed on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689; it is not enough to show that the representation "deviated from best practices or most common custom," *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). On review under § 2254(d), this standard is "doubly" deferential and the relevant question is not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

There is no evidence that Petitioner's right to effective assistance of counsel was violated here. As an initial matter, counsel's statement that Petitioner made no specific arguments under *Barker* appears to be factually correct, and Petitioner does not point to any contrary indication in the record. As the state habeas court observed, "the issues were presented to the New Mexico Supreme Court, Petitioner just did not like the way they were presented." *Doc. 11-3* at 247. Moreover, the state habeas court denied relief because "the procedure of applying for certiorari from the court of appeals decision is a discretionary appeal, and Petitioner is not guaranteed the effective assistance of counsel on a discretionary appeal, only the first appeal as of right." *Id.*; *see Wainwright v. Torna*, 455 U.S. 586, 587 (1982) ("[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals[.]"). Petitioner cites no authority showing that effective assistance of counsel is guaranteed on a discretionary appeal, or that his own appeal to the New Mexico Supreme Court was non-discretionary. Therefore, he has not demonstrated an entitlement to relief.

**IV. Conclusion**

For the foregoing reasons, I find no basis for relief under § 2254 and therefore RECOMMEND that the Petition be DENIED.

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**